IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LEWIS S. MCGINNIS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:21-CV-1988-E |
| § | |
| NATIONWIDE LIFE AND ANNUITY § | |
| INSURANCE, CO., JAMES A. MUELLER, § | |
| and AGENCY SERVICES OF ARKANSAS § | |
| d/b/a THE ASA GROUP, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions: (1) Defendant Nationwide Life and Annuity Insurance, Co.'s ("Nationwide") Motion to Dismiss Complaint and Memorandum in Support (the "Nationwide Motion to Dismiss"), (ECF No. 10); (2) Defendant James A. Mueller's ("Mueller") Motion to Dismiss Complaint (the "Mueller Motion to Dismiss"), (ECF No. 12); and (3) Defendant Agency Services of Arkansas, Inc. d/b/a The ASA Group's ("ASA") Motion to Dismiss Complaint (the "ASA Motion to Dismiss"), (ECF No. 13). Having considered the motions, the responses and replies, the relevant portions of the record, and the relevant law, the Court rules as follows:

1. The Nationwide Motion to Dismiss, (ECF No. 10), is **GRANTED**;

2. The Mueller Motion to Dismiss, (ECF No. 12), is **GRANTED**;

3. The ASA Motion to Dismiss, (ECF No. 13), is **GRANTED**;

For the reasons discussed below, the Court concludes that it does not have personal jurisdiction over any of the three defendants in this case. Accordingly, this case is **dismissed without prejudice.**

## I. BACKGROUND

This case arises out of a dispute over a life insurance policy.[1] On July 19, 2021, Plaintiff Lewis S. McGinnis ("McGinnis") filed suit against Nationwide, Mueller, and ASA in the 162nd Judicial District Court of Dallas County, Texas, asserting causes of action for constructive fraud, common law fraud, breach of contract, negligent misrepresentation, violation of the Texas Deceptive Trade Practices Act, deceptive insurance practices, and breach of fiduciary duty. (*See* ECF No. 20-2, ¶¶ 28-58). On August 24, 2021, Nationwide removed this case to federal court—with the consent of Mueller and ASA—on the basis of diversity jurisdiction. (*See* ECF No. 1).

McGinnis is a resident and a citizen of the State of Texas. (ECF No. 20-2, ¶ 2). Nationwide is a corporation that is incorporated in the State of Ohio, with its principal place of business is in the State of Ohio. (ECF No. 20-2, ¶ 3; ECF No. 20-7, ¶ 4-5). Mueller is resident and citizen of the State of Oklahoma. (ECF No. 20-2, ¶ 4). ASA is a corporation that is incorporated in the State of Arkansas, with its principal place of business is in the State of Arkansas. (ECF No. 20-2, ¶ 5).

According to McGinnis's Original State Court Petition (the "State Court Petition"), McGinnis first met Mueller—a life insurance agent—while attending church in Oklahoma. (ECF No. 20-2, ¶ 12). McGinnis alleges Mueller—upon learning that McGinnis had a substantial personal net-worth—held himself out to McGinnis "as possessing specialized estate planning knowledge and training beyond that generally held by a typical life insurance agent." (ECF No. 20-2, ¶ 15). McGinnis purchased two life insurance policies from Nationwide through Mueller and ASA. (ECF No. 20-2, ¶ 18). In the State Court Petition, McGinnis alleges that:

> [O]n information and belief, Mueller could have placed McGinnis's application for insurance with any number of life insurance carriers with which he maintained a non-captive agency appointment. Instead, Mueller went out of his way to place the insurance through an out of state insurance broker known as the ASA Group. The

---
[1] The Court derives the factual background from Plaintiff Lewis S. McGinnis's Original State Court Petition. (ECF No. 20-2).

> ASA Group had a direct general agency contract with Nationwide. Mueller placed the insurance through the ASA Group to personally benefit himself by gaining access to a high commission paying Universal Life Insurance policy which was underwritten and marketed by Nationwide—a policy which Mueller did not have direct access to at the time of the transaction. In addition to earning an above average commission from the sale of the Nationwide UL policy, Mueller received additional incentives in the form of trips, prizes, and other non-cash compensation to further incentivize him to market Nationwide's Universal Life Insurance policy, irrespective of McGinnis's unique estate planning and permanent insurance needs.

(ECF No. 20-2, ¶ 18).

McGinnis alleges that the insurance policies "sold by Mueller—brokered by ASA, and underwritten by Nationwide[—]did not perform as illustrated and guaranteed." (ECF No. 20-2, ¶ 23). McGinnis further alleges that the defendants—without specifying whom specifically—"failed to deliver the issued insurance policies . . . as required by state insurance laws" and "failed to give McGinnis written notice that additional premium payments or a reduction is [(sic)] death benefits were required to avoid cancellation." (ECF No. 20-2, ¶ 24). With respect to ASA, McGinnis alleges that it: (1) "provided no supervision over [its] agent Mueller;" (2) "did not verify product suitability for the purposes of estate planning;" and (3) "did not verify that the issued policies were in fact delivered to McGinnis." (ECF No. 20-2, ¶ 25). With respect to Nationwide, McGinnis alleges that it: (1) "failed to verify product suitability;" (2) "did not verify that the issued policies were delivered;" (3) "issued false policy illustrations;" and (4) "breached several warranties as to policy performance." (ECF No. 20-2, ¶ 26).

On August 30, 2021, Nationwide filed a motion to dismiss McGinnis's claims against it under Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 10). On August 31, 2021, Mueller filed a motion to dismiss McGinnis's claims against him under Rule 12(b)(2) for lack of personal jurisdiction. (ECF No. 12). On September 20, 2021, ASA filed a motion to dismiss McGinnis's claims against it under Rule 12(b)(2) for lack of personal jurisdiction. (ECF No. 13). On November 11, 2021, the

Court stayed this case pending the resolution of McGinnis's appeal to the Fifth Circuit in a related case—*McGinnis v. Nationwide Life & Annuity Insurance Co.*, No. 3:20-cv-03138-D. (ECF No. 38). On March 7, 2022, the Fifth Circuit dismissed that appeal as moot. *See McGinnis v. Nationwide Life & Annuity Ins. Co.*, No. 21-10735, 2022 WL 670153 (5th Cir. Mar. 7, 2022). On May 4, 2022, the Court lifted the stay. (ECF No. 38). The Court now considers the Nationwide Motion to Dismiss, the Mueller Motion to Dismiss, and the ASA Motion to Dismiss, all of which are fully briefed and ripe for determination.

## II. LEGAL STANDARD

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant but need only make a *prima facie* case supporting personal jurisdiction at the Rule 12(b)(2) stage. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (citations omitted). In ruling on Rule 12(b)(2) motions, courts must accept a plaintiff's uncontroverted, nonconclusory factual allegations as true and resolve all controverted allegations in the plaintiff's favor. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citation omitted). However, courts need not credit conclusory allegations, even if uncontroverted, in ruling on a motion to dismiss for lack of personal jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citations omitted). Courts may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, and other recognized methods of discovery. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted).

A federal court sitting in diversity in Texas may exercise personal jurisdiction over a nonresident defendant if permitted by: (1) the Texas long-arm statute; and (2) the due process

clause of the Fourteenth Amendment. *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 249-50 (5th Cir. 2019) (citation omitted). Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis. *Id.* Federal due process is satisfied if two requirements are met: (1) the nonresident purposely availed itself of the benefits and protections of the forum State by establishing "minimum contacts" with the State; and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.* at 250. The "'purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). A defendant's "minimum contacts" may give rise to either general or specific jurisdiction. *Id.*

> With respect to general jurisdiction, the Fifth Circuit has explained that:
>
> "A court may assert general jurisdiction over [nonresident defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." [*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)]. Establishing general jurisdiction is "difficult" and requires "extensive contacts between a defendant and a forum." [*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)]. "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required . . . . [V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.* at 609–10 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)).

*Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101–02 (5th Cir. 2018) (first and fourth alterations in original). "The 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear*, 564 U.S. at 919). In an exceptional case, a corporate defendant's operations in another

forum may be so substantial and of such a nature as to render the corporation at home in that state. *Id.* (citations omitted). However, "'the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts.'" *Id.* at 413 (quoting *Daimler*, 571 U.S. at 139 n. 20). Instead, "the inquiry 'calls for an appraisal of a corporation's activities in their entirety;' '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *Id.* (quoting *Daimler*, 571 U.S. at 140, n. 20). Otherwise, "at home" would be synonymous with "doing business." *Daimler*, 571 U.S. at 140, n. 20.

Specific jurisdiction is different. *Bristol-Myers Squibb Co. v. Superior Court of Ca.*, 582 U.S. 255, 262 (2017). With respect to specific jurisdiction, the Fifth Circuit has explained that:

> Specific jurisdiction may exist "over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). In other words, such jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation marks omitted). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." [*Goodyear*, 564 U.S. at 919] (quotations omitted).

*Sangha*, 882 F.3d at 101. The Supreme Court has explained that the specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (citation and internal quotation marks omitted). Specifically, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Sangha*, 882 F.3d at 101 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215

(5th Cir. 1999). To do so, "[t]he defendant must make a "compelling case." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The Supreme Court has identified five factors relevant to a determination of whether the exercise of jurisdiction is fair and reasonable. Those factors are:

> (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies. [*Rudzewicz*, 471 U.S. at 477]; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

*Id.* However, the fairness-factor analysis is unnecessary if a court concludes that it does not have general jurisdiction over a nonresident defendant or specific jurisdiction over a plaintiff's claims against that defendant. *See Stuart* 772 F.2d at 1191-92 ("[T]he fairness factors cannot of themselves invest the court with jurisdiction over a non-resident when the minimum contacts analysis weighs against the exercise of jurisdiction.").

### III.  ANALYSIS

**A.    The Nationwide Motion to Dismiss is Granted**

The Court concludes that it lacks personal jurisdiction over Nationwide. Having so concluded, the Court pretermits consideration of Nationwide's arguments as to whether McGinnis failed to state a claim upon which relief can be granted.

*1.    The Court lacks general jurisdiction over Nationwide*

The Court concludes it lacks general jurisdiction over Nationwide because Nationwide's contacts with Texas are not so continuous and systematic as to render Nationwide essentially at home in Texas. *See Goodyear*, 564 U.S. at 919. McGinnis admits that Nationwide is incorporated in the State of Ohio and has its principal place of business in that state. (*See* ECF No. 20-2, ¶ 3).

Because Nationwide is neither incorporated nor has its principal place of business in Texas, for the Court to have general jurisdiction over Nationwide this must be an "'exceptional case'"—that is, Nationwide's operations in Texas must be "'so substantial and of such a nature as to render [Nationwide] at home in [Texas]." *BNSF Ry*, 581 U.S. at 413 (quoting *Daimler*, 571 U.S. at 127). This is not such a case.

McGinnis bears the burden of making a *prima facie* case showing that personal jurisdiction is proper. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 295 (5th Cir. 2020). The only allegation in the State Court Petition that potentially connects Nationwide to Texas is McGinnis's assertion that "Defendants are doing business in the [S]tate of Texas." (ECF No. 20-2, ¶ 10). This allegation is conclusory; thus, the Court need not credit it in McGinnis's favor. *See Panda Brandywine*, 253 F.3d at 869 ("[T]he district court correctly held that the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted.") (collecting cases). Moreover, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609. Indeed, "[e]ven repeated contacts with forum residents by a foreign defendant"—which McGinnis does not allege in the State Court Petition with respect to Nationwide—"may not constitute the requisite substantial, continuous[,] and systematic contacts required" to establish general jurisdiction. *Id.*

In his response to the Nationwide Motion to Dismiss, McGinnis argues that Nationwide is at home in Texas because (1) it wrote $335,998,826 in annuity premiums and $117,822,461 in life insurance premiums in Texas in 2019 and (2) its "website reveals that it maintains hundreds of offices and thousands of agents throughout Texas." (ECF No. 19, ¶¶ 8-10). These allegations, however, are insufficient to render Nationwide essentially at home in Texas. The general

jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts. *Daimler*, 571 U.S. at 139 n. 20. The Supreme Court has explained that:

> General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, "at home" would be synonymous with "doing business" tests framed before specific jurisdiction evolved in the United States.

*Id.* In *BNSF*, the Supreme Court applied this principle to the question of whether Montana federal courts had general jurisdiction over a railroad company with over 2,000 miles of railroad track and more than 2,000 employees in that state. *BNSF Ry*, 581 U.S. at 414. The Supreme Court held that it did not because, while a company's business in a given state "is sufficient to subject the [company] to specific personal jurisdiction in that [s]tate on claims related to the business it does in [that state]," such business "does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [that state]." *Id.* As discussed below, McGinnis's pleadings and claims against Nationwide are based in activity in Oklahoma—unrelated to the business Nationwide does in Texas. Thus, in accordance with the principles laid out by the Supreme Court, the Court concludes that it does not have general jurisdiction over Nationwide. *See Goodyear*, 564 U.S. 919; *Daimler*, 571 U.S. at 139 n. 20.

   2.   *The Court lacks specific jurisdiction over any of McGinnis's claims against Nationwide*

Because the Court does not have general jurisdiction over Nationwide, McGinnis must establish a *prima facie* case showing that the Court has specific jurisdiction over his claims against Nationwide. *See Progressive Cnty. Mut. Ins. Co. v. Goodyear Tire & Rubber Co.*, No. 1:18CV321-LG-RHW, 2019 WL 13203981, at * 2 (S.D. Miss. Apr. 23, 2019) ("Progressive has not established that general jurisdiction is proper. [Thus,] [i]f personal jurisdiction exists over Goodyear, it must arise from the Court's specific jurisdiction.") Specific jurisdiction exists "when a nonresident

defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs.*, 517 F.3d at 243. The question is "whether there was 'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). McGinnis has not established a *prima facie* case supporting this Court's specific jurisdiction over his claims against Nationwide.

Nationwide concedes that "the issuance of life insurance policies to a citizen of Texas would be sufficient *in most cases* to establish personal jurisdiction" but argues that McGinnis has not alleged facts establishing that this is one of those cases. (ECF No. 10, pg. 14) (emphasis added). The Court agrees. The State Court Petition does not allege that the life insurance policies in question were issued to McGinnis while McGinnis was in or a citizen of Texas, and no facts in the record support such a conclusion. In fact, the record evidence indicates that all contacts between McGinnis and Nationwide flowed through Oklahoma—not Texas.

When McGinnis first applied for a life insurance policy with Nationwide, he listed an Oklahoma address. (ECF No. 11, pg. 46). Nationwide's illustration for the policy, signed by McGinnis, indicated that the policy was to be issued in Oklahoma. (ECF No. 11, pg. 67, 73). Premium payments for the policy were made from McGinnis's businesses in Oklahoma and drawn from banks in either Oklahoma or Colorado. (ECF No. 11, pgs. 87, 92, 94, 96, 97, 98, 101, 187-88, 190). When McGinnis applied for the second life insurance policy, the application again listed an Oklahoma address. (ECF No. 11, pg. 133). Nationwide's policy illustration for the second life insurance policy also indicated that the policy was to be issued in Oklahoma. (ECF No. 11, pg. 161). The sole premium payment made on the second life insurance policy was made from an

Oklahoma business account and drawn from an Oklahoma bank. (ECF No. 11, pg. 177). McGinnis eventually disputed his first insurance policy with the Oklahoma Insurance Department and listed an Oklahoma address on the forms he submitted to that agency. (ECF No. 11, pgs. 266-67)

The record shows that all communications from McGinnis or his attorney to Nationwide regarding these policies and their ultimate lapses due to missed premium payments came from Oklahoma. (ECF No. 11, pgs. 182-191). The record also indicates that Nationwide only corresponded with McGinnis regarding his policies, their lapses, and their eventual reinstatement at his Oklahoma addresses. (ECF. No. 11, pgs. 193-263). Finally, in a sworn declaration, Mark Trigg—a claims consultant with Nationwide's parent company—testifies that:

> 6.   Neither Nationwide Defendant has located any correspondence that they ever sent to [McGinnis] at any address in Texas. Neither Nationwide Defendant was ever provided with a mailing or contact address for [McGinnis] in Texas.
>
> 7.   All of Nationwide Annuity's correspondence and interactions with [McGinnis] related to either of [the policies in question] were sent to him, or to his attention at mailing addresses in Oklahoma, and never Texas. Nationwide Annuity directed correspondence to [McGinnis] at a home address and a business address. Both locations were in Oklahoma.

(ECF No. 11, pgs. 325-327). McGinnis directs the Court to no evidence contradicting the evidence provided by Nationwide.

McGinnis does not plead any facts detailing specific conduct by Nationwide that was directed at Texas and related to McGinnis's claims against Nationwide, and the uncontroverted evidence in the record indicates that Nationwide never engaged in any such conduct. Under these circumstances, the Court must conclude that McGinnis has not established that this litigation "results from alleged injuries that arise out of or relate to" activities that Nationwide "purposefully directed" at the State of Texas. *Walk Haydel & Assoc.*, 517 F.3d at 243. Thus, the Court concludes that it lacks specific jurisdiction over any of McGinnis's claims against Nationwide. *Goodyear*,

564 U.S. at 924.

Because the Court concludes McGinnis has not established that Nationwide had the minimum contacts with the State of Texas required for either general jurisdiction over Nationwide or specific jurisdiction over McGinnis's claims against Nationwide, the Court need not conduct a fairness-factor analysis. *See Stuart* 772 F.2d at 1191-92. For the foregoing reasons, the Court **GRANTS** the Nationwide Motion to Dismiss and dismisses McGinnis's claims against Nationwide under Rule 12(b)(2) for lack of personal jurisdiction.

**B.      The Mueller Motion to Dismiss is Granted**

McGinnis has not established a *prima facie* case showing that the Court has either general jurisdiction over Mueller or specific jurisdiction over any of McGinnis's claims against Mueller. McGinnis himself alleges that Mueller is a resident and citizen of Oklahoma. (ECF No. 20-2, ¶ 4). Thus, as with Nationwide, for the Court to have general jurisdiction over Mueller, Mueller must have contacts with Texas that are so continuous and systematic as to render him essentially at home in the state. *Goodyear*, 564 U.S. at 919. Plaintiff has not carried his burden to establish that such contacts exist.

As with Nationwide, the only allegation in the State Court Petition that could potentially connect Mueller to Texas is McGinnis's undifferentiated, conclusory allegation that "Defendants do business in the [S]tate of Texas." (ECF No. 20-2, ¶ 10). Again, as with Nationwide, this "vague and overgeneralized assertion[] . . . give[s] no indication as to the extent, duration, or frequency" of Mueller's contacts with Texas; thus, it is insufficient to support general jurisdiction. *Johnston*, 523 F.3d at 609. In fact, Mueller testifies via sworn affidavit that his is a resident of Oklahoma, and "all of the facts that give rise to the allegations . . . against [him] . . . occurred in Oklahoma, wherein [his] principal place of business is located." (ECF No. 12-1, ¶¶ 2-3). McGinnis directs the

Court to no evidence contradicting the evidence provided by Mueller. Not only is McGinnis's lone factual allegation connecting Mueller to Texas conclusory, but it is also contradicted by the uncontroverted evidence in the record. Thus, the Court does not credit McGinnis's lone jurisdictional allegation relating to Mueller in McGinnis's favor. *See Panda Brandywine*, 253 F.3d at 869. As such, the Court concludes that McGinnis has not established that the Court has general jurisdiction over Mueller.

The Court likewise concludes McGinnis has failed to establish that the Court has specific jurisdiction over McGinnis's claims against Mueller. McGinnis has not established that this litigation "results from alleged injuries that arise out of or relate to" activities that Mueller "purposefully directed" at the State of Texas. *Walk Haydel & Assoc.*, 517 F.3d at 243. His lone factual allegation connecting Mueller to Texas is not credited in his favor because it is both conclusory and contradicted by record evidence. Thus, the Court concludes that it lacks specific jurisdiction over any of McGinnis's claims against Mueller. *Goodyear*, 564 U.S. at 924.

Because the Court concludes McGinnis has not established that Mueller had the minimum contacts with the State of Texas required for either general jurisdiction over Mueller or specific jurisdiction over McGinnis's claims against Mueller, the Court need not conduct a fairness-factor analysis. *See Stuart* 772 F.2d at 1191-92. For the foregoing reasons, the Court **GRANTS** the Mueller Motion to Dismiss and dismisses McGinnis's claims against Mueller under Rule 12(b)(6) for lack of personal jurisdiction.

### C.     The ASA Motion to Dismiss is Granted

Last, McGinnis has not established a *prima facie* case showing that the Court has either general jurisdiction over ASA or specific jurisdiction over any of McGinnis's claims against ASA for the same reasons he fails to do so with respect to Nationwide and Mueller. McGinnis himself

alleges that ASA is incorporated in the Arkansas and has its principal place of business in that state. (ECF No. 20-2, ¶ 5). As with Nationwide and Mueller, McGinnis's lone factual allegation that potentially connects ASA to Texas is conclusory and vague; thus, it is not credited in his favor. *See Panda Brandywine*, 253 F.3d at 869. As such, McGinnis has not alleged facts showing that ASA has contacts with Texas that are so systematic and continuous as to warrant a conclusion that this Court has general jurisdiction over ASA. *See Goodyear*, 564 U.S. 919. Similarly, McGinnis has not established that this litigation "results from alleged injuries that arise out of or relate to" activities that ASA "purposefully directed" at the State of Texas. *Walk Haydel & Assoc.*, 517 F.3d at 243. Thus, the Court concludes that it lacks specific jurisdiction over any of McGinnis's claims against ASA. *Goodyear*, 564 U.S. at 924.

Because the Court concludes McGinnis has not established that ASA had the minimum contacts with the State of Texas required for either general jurisdiction over ASA or specific jurisdiction over McGinnis's claims against ASA, the Court need not conduct a fairness-factor analysis. *See Stuart* 772 F.2d at 1191-92. For the foregoing reasons, the Court **GRANTS** the ASA Motion to Dismiss and dismisses McGinnis's claims against ASA under Rule 12(b)(2) for lack of personal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Nationwide Motion to Dismiss, (Doc. 10), the Mueller Motion to Dismiss, (Doc. 12), and the ASA Motion to Dismiss, (Doc. 13). Having concluded that it lacks personal jurisdiction over any of the three defendants in this case, the Court hereby **DISMISSES THIS CASE WITHOUT PREJUDICE**. *See Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc*, 115 F. App'x 662, 666 (5th Cir. 2004) (when a "district court's ruling on personal jurisdiction [does] not address the merits," the claims should be "dismissed without prejudice for filing in an appropriate forum").

**SO ORDERED:** June 29, 2023

*[signature]*

Ada Brown
UNITED STATES DISTRICT JUDGE